UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Clara Lewis Brockington,<br><br>Plaintiff,<br><br>-vs-<br><br>Bethea Baptist Retirement Community; John Moore, III; Martha Ann Arant; and Baptist Ministries for the Aging,<br><br>Defendants. | ) | Civil Action No. 4:04-216-RBH-TER<br><br>REPORT AND RECOMMENDATION |

Plaintiff, proceeding *pro se*[1] and *informa pauperis*, filed this claim January 23, 2004, alleging employment discrimination on the basis of race, gender and disability. In her complaint, plaintiff alleges as follows:

> John Moore, III, Administrator began harassing me concerning paperwork, school time, Behavior Log Book, lunch time, picking my daughter up from school, requesting me to come to work when the physician had me out on bed rest and started writing me up monthly. John threatened me that if I did not sign the writeups, he would allow other staff to come and read them to me and they sign the writeups. John Moore asked the secretaries to monitor ONLY my calls, my office, my coming and going at Bethea. John Moore asked the secretary/receptionist to ride by my house when I am out on sick

---

[1] A pro se litigant's pleadings are accorded a liberal construction. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed. 163, 101 S.Ct. 173 (1980); Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 97 S.Ct. 594 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). The mandated liberal construction means only that if the court can reasonably read the pleadings to state a claim on which Plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the Plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).

> leave. John Moore refused to allow me to return to my job at Bethea Home as Social Worker Director on numerous occasions. John Moore hired a white female and never notified me of this action. John Moore told me and the Bethea Staff that my job would be there when I return from worker's comp. injury. John Moore yelled at me on the halls in front of other staff being disrespectful, unprofessional and in anger tones. John Moore wrote me up approximately monthly and never wrote any white staff up for the same issue. I was an employee of Bethea from 8/99 to 10/03. I never received no writeups until John Moore was hired 01/2002. I feel that I was discriminated against due to my race, gender and disability. Previous staff have been accommodated at Bethea. I was retaliated against by not being able to return to work when I filed charges with Human Affairs against John Moore, III. I was harassed everyday by John Moore, III (when he was at Bethea). I was treated unfair and different by John Moore, III. John never communicated with me when he was at Bethea. John Moore had conversations with his clerical staff concerning me. (how he was going to do a paper trail and get rid of me.) Martha Ann Arant supported John Moore and wrote me up numerous times also.[2]

The matter is now before the court on defendants' motion for summary judgment filed August 31, 2005 (Document # 37).

A scheduling order was initially issued in this action on March 30, 2004, setting a discovery deadline of December 16, 2004, a dispositive motions deadline of December 30, 2004, and a trial date of not before April 4, 2005. By letter dated April 12, 2004, plaintiff requested that the first three dates of the scheduling order be extended because the attorney that was going to represent her was in the hospital. (Doc. # 14). The defendants' counsel responded indicating no objection to the request to extend the time but raised concerns regarding representation by an attorney and their contact with plaintiff, whether *pro se* or through an attorney. The undersigned held a hearing on

---

[2] In response to Rule 26.01 interrogatories as the basis for asserting the claim in this division, plaintiff responded, "Worker's Compensation Case that ended in termination (wrongful termination). Unfair treatment. Discriminated against while on worker's compensation and a white female was hired instead of rehiring me. No disciplinary was even given until the new administrator was hired. American disability not violated retaliation from worker's comp. filing.

May 3, 2004, and granted plaintiff's request to extend the first three dates contained within the scheduling order. Additionally, the undersigned informed plaintiff that if she was represented, her attorney must file a notice of appearance on her behalf. The undersigned set a deadline of May 13, 2004, for plaintiff to have an attorney make an appearance before the case would continue with plaintiff proceeding *pro se*.

By letter filed June 25, 2004, plaintiff notified the court that Chalmer Johnson, Esq., would be representing her and would be filing an appearance within "the next couple of weeks." (Document # 18).

Defendants filed a motion to amend the scheduling order on December 15, 2004, requesting a three month extension to the deadlines in the scheduling order. (Document # 20). Defendants based the request on the period of time during which plaintiff indicated that she was retaining an attorney. The undersigned issued an amended scheduling order on January 3, 2005, setting a discovery deadline of March 16, 2005, a dispositive motions deadline of March 30, 2005, and a trial date not before June 3, 2005.

Defendants filed a second motion to amend the scheduling order on March 17, 2005 (Document # 23). The undersigned granted the motion and entered an amended scheduling order setting a discovery deadline of April 29, 2004, and a trial date not before August 15, 2005.

Plaintiff filed a motion to amend the scheduling order May 12, 2005, indicating her spouse had been hospitalized. (Document # 28). Defendants responded that they did not object to the revised scheduling order. (Document # 29). A revised scheduling order was entered on June 1, 2005, setting a discovery deadline of July 31, 2005, a dispositive motions deadline of August 31, 2005, and a trial date not before November 15, 2005.

On July 29, 2005, defendants filed a motion to compel responses to discovery (Document # 32). Plaintiff has not filed a response to this motion. This motion was granted by order filed January 30, 2006.

Plaintiff filed an additional motion to amend the scheduling order on August 2, 2005. (Document # 34). She filed an additional motion to amend the scheduling order on August 16, 2005. (Document # 35). Again, plaintiff indicated a need to meet with her attorney, as well as time to care for her children and ill husband. She indicated that her scheduled appointment with her attorney was in the middle of September. (Document # 35). Defendants responded to this request stating that they did not object to a short extension for plaintiff to file responses to their discovery.

Another amended scheduling order was entered on September 7, 2005, setting a discovery deadline of September 30, 2005, and a trial date of not before December 1, 2005.

On August 31, 2005, defendants filed their motion for summary judgment. Because the plaintiff is proceeding *pro se*, she was advised on or about September 1, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to adequately respond[3] to the defendants' motion for summary judgment could result in dismissal of their case. Plaintiff has failed to respond.

**RULE 41(B) DISMISSAL**

A complaint may be dismissed pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v.

[3] The order states that failure "to respond adequately, the motion may be granted, thereby ending the case. Careful attention should be given to the requirements of Rule 56(e) concerning the necessity for affidavits . . . to be based upon personal knowledge, to contain facts admissible in evidence, and to be executed by a person who would be competent to testify as to matter contained in the affidavit if he or she was called to the witness stand . . . . submission of a brief . . . will not be sufficient alone to withstand a properly supported motion for summary judgment."

Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied 493 U.S. 1084 (1990) and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

    (1)    the degree of plaintiff's responsibility in failing to respond;
    (2)    the amount of prejudice to the defendant;
    (3)    the history of the plaintiff in proceeding in a dilatory manner; and,
    (4)    the existence of less drastic sanctions other than dismissal.

Davis v. Williams, 588 F.2d 69 (4th Cir. 1978).

In the present case, the plaintiff is proceeding *pro se* so she is entirely responsible for her actions. It is solely through plaintiff's neglect, and not that of an attorney, that no response has been filed. Plaintiff has not responded to defendants' motion for summary judgment or to defendants' motion to compel. Since filing her complaint in January 2004, over two years ago, plaintiff has failed to participate in the action except to submit requests to extend the time to participate in the lawsuit. The undersigned has allowed each such request and plaintiff has failed to participate in this case within the time allowed under any of the six scheduling orders issued. Furthermore, the plaintiff has failed to respond to the motion for summary judgment filed by the defendants. The undersigned can only conclude the plaintiff has abandoned his lawsuit. No other reasonable sanctions are available. Accordingly, it is recommended that this action be dismissed pursuant to Fed. R. Civ. Proc. 41(b). However, it is noted that plaintiff has also pending in this court Case No. 4:04-23042 wherein she alleges discrimination on the basis of disability. It is recommended that this case, to the extent it alleges retaliation based on disability, be consolidated with 4:04-23042, and the remainder of this case be dismissed.

In the event the district judge does not agree with this recommendation, the defendants'

motion for summary judgment is discussed below.

Because plaintiff has failed to respond to defendants' motion for summary judgment, the facts as set out by the defendant are undisputed, and are briefly set out below.

South Carolina Baptist Ministries for the Aging, Inc., (SCBMA)operates two separate facilities in South Carolina, one of which is the Bethea Baptist Retirement Community and Healthcare Center (Bethea Home). John Moore, III, (Moore) was the administrator of Bethea Home from approximately January 2002 until March 2004. Martha Ann Arant was the Vice President of Clinical Services for Bethea Home and maintained the responsibility for oversight of healthcare services provided to residents of Bethea Home.

Plaintiff was the Admissions Coordinator/Social Worker for Bethea Home and reported directly to Moore. Her responsibilities included the admission of residents to the skilled nursing facility and various social work activities with the facility residents. No other Bethea Home employees reported to plaintiff.

On August 2, 2002, three corrective action forms were given to plaintiff which are summarized[4] as follows:

> (1) Form dated August 2, 2002: Brockington did not work during the course of a DHEC certification survey beginning on July 23, 2002, because she was absent due to sickness. Brockington had to return the Behavior Modification Logs to Bethea Home because they were needed for the DHEC survey. She had previously been instructed by Moore not to remove documents from Bethea Home or store the documents outside Bethea Home. This form was for unsatisfactory work performance.
> (2) Form date July 25, 2002: A Medicare certification inspection of Bethea Home conducted on July 24, 2002, revealed a violation regarding the failure of Social Services to secure the signature of the resident or responsible party on a Medicare Non-coverage Letter. This was a problem in five records. The

[4] This summary is repeated verbatim from defendants' memorandum.

> importance of completion of this letter was addressed in a previous counseling session with Brockington. This form was for improper handling of records and unsatisfactory work performance.
> (3) Form dated July 18, 2002: Brockington admitted a resident on July 15, 2002, without a discharge summary or history and physical from the hospital of discharge. In addition, there was no PPD (a tuberculosis test) or chart x-ray available until July 18, 2002. This form was for unsatisfactory work performance.

Brockington disagreed with each of these forms for corrective action and placed a statement on each form. Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission (SHAC) and the Equal Employment Opportunity Commission on August 16, 2002. The EEOC adopted the findings of SHAC and issued a "no cause" dismissal and right to sue on October 24, 2003.

After filing the Charge of Discrimination, plaintiff delivered to Joe Babb, CEO and President of SCBMA requesting a grievance review of her general allegations of continuing harassment and hostile environment at Bethea Home. Mr. Babb sent plaintiff a letter requesting details of her allegations. Plaintiff failed to respond to his request. Plaintiff subsequently filed this action.

***Discussion***

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material

element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celetex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v.

Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

***Liability of the Individual Defendants***

Defendants first assert that supervisors or individual defendants are not liable in their individual capacities under Title VII.

Paroline v. Unisys Corp., 879 F.2d 100 (4th Cir. 1989), *rev'd in part en banc*, held that individuals could be held personally liable in a Title VII case if they met the statutory definition of employer which the court construed to include individuals who "serve in a supervisory position and exercise . . . significant control over plaintiff's hiring, firing or conditions of employment." Id. at 104.[5] The district judge in Emmons v. Rose's Stores, Inc., 5 F.Supp.2d 358 (E.D.N.C. 1997) recognized the doubt of the continuing viability of Paroline, and decided the case consistent with the Fourth Circuit's decision in Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir. 1994). Birkbeck addressed the availability of individual liability in an action brought pursuant to the Age Discrimination in Employment Act (ADEA). After discussing the statutory definition of "employer" and finding little sense to hold a single defendant liable when Congress expressly exempted all employers, corporate, individual or otherwise, from liability if it employed fewer than the requisite number of employees triggering applicability of the ADEA itself, it held a individual supervisor could not be held liable under the ADEA. Id. at 510. However, the Birkbeck court did limit the holding to employees/agents engaging in "personnel decisions of plainly delegable character." Id. at n.1. Subsequent to Birkbeck, the Fourth Circuit, noting the similarity and relation in statutory language and Congressional intent relating to the ADEA, ADA and Title VII, held that there is no individual liability in cases brought pursuant to the Title VII, Lissau v. Southern Food Service, Inc.,

[5] Paroline was reversed *en banc* on other grounds.

159 F.3d 177, 181 (4th Cir. 1998), or the ADA, Baird v. Baird, 192 F.3d 462, 472 (4th Cir. 1999). The Lissau and Baird decisions do not contain the caveat or limitation based upon "delegable decisions" and emphasize the definition of "employer" under the respective statutes. Title VII and the ADA contain definitions of "employer" to include a person who employs a certain number of employees. 42 U.S.C. §2000e(b)(Title VII); 42 U.S.C. §12111(5)(A)(ADA). Based on the current state of the law in this circuit and under the facts alleged by plaintiff in her complaint, plaintiff's causes of action under Title VII and the ADA against the defendants in their individual capacities should be dismissed.

***Race/Gender Discrimination Claims***

There are two methods of proving a case of intentional discrimination under Title VII: the method set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (mixed-motive) and the method established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(pretext).

Under the McDonnell Douglas[6] analysis, plaintiff has the initial burden of demonstrating a *prima facie* case of discrimination. To establish a *prima facie* case, plaintiff must show (1) she is a member of a protected class; (2) she was qualified for his job and his job performance was satisfactory; (3) she suffered an adverse employment action; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002).[7] The fourth element can be established

---

[6] The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., – U.S. –, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[7] The required elements of a prima facie case of employment discrimination are the same under Title VII and Section 1981. Gairola v. Commonwealth of Va. Dept. of Gen. Servs.,

by presenting evidence raising an inference of discrimination. See EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)). Once plaintiff has established a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the termination. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). Once the defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true reasons, but were pretext for discrimination. Reeves, 530 U.S. at 143. During all of the burden shifting scheme set forth in McDonald Douglas, the ultimate burden of proving that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Plaintiff may also proceed under the mixed-motive method of establishing intentional discrimination. Under this method, a plaintiff must present sufficient evidence, direct or circumstantial, that, despite the existence of legitimate, nondiscriminatory reasons for the adverse employment action, an illegal factor (i.e., race) was a motivating factor in the decision. Hill, 354 F.3d at 284-86. Plaintiff need not show race was the sole motivating factor but only that it was a motivating factor. Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). The racial bias must come from

---

753 F.2d 1281, 1285 (4th Cir.1985).

a relevant decision maker.[8]  Also, the protected trait "must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." Hill, 354 F.3d at 286.

Regardless of which method is used to analyze the claim, plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her based on her race or gender.  It is not necessary to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."[9] Hawkins v. Pepsico, 203 F.3d 274, 279 (4thCir. 2000)(quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir. 1998); DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." (internal quotation marks omitted)); Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir.1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."); Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir.1995) ("Title VII is not a vehicle for substituting the judgment of a court for that of the employer").  It is the perception of the employer that is critical. Hawkins, 203 F.3d at 280.  Even a reasoned decision based on incorrect facts is not evidence of

---

[8] See Hill, 354 F.3d at 291 ("an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision.").

[9] "Proof that the employer's proffered reasons in unpersuasive, or even obviously contrived, . . . does not necessarily establish that [plaintiff's] proffered reason (race discrimination) . . . is correct." Reeves, 530 U.S. at 146-47.  "It is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004).  Plaintiff must show a reasonable jury could "believe [her] explanation of intentional race discrimination." Id.

pretext. Pollard v. Rea Magnet Wire Co., 824 F.3d 557, 559 (7th Cir. 1987), cert. denied, 484 U.S. 977 (1987).

Defendant asserts that plaintiff fails to establish an adverse employment action as is necessary to establish a *prima facie* case under the pretext analysis. Conduct short of "ultimate employment decisions – to hire, discharge, refuse to promote, etc. – can constitute an adverse employment action under Title VII." Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001). Retaliatory harassment also can constitute an adverse employment action. Id. (Citing Ross, 759 F.2d at 363). Plaintiff must establish that the challenged discriminatory acts of harassment adversely affected "the terms, conditions, or benefits" of her employment. Id. (citing Munday v. Waste Mgmt. Of North America, Inc., 126 F.3d 239,243 (4th Cir. 1997)). She must show that the change was significant. See Von Gunten, 243 F.3d at 868 (a significant change in job assignment can adversely effect a person's terms, conditions and benefits of employment); See generally Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257, 2268 (1998)("A tangible employment action constitutes a significant change in employment status, such as...a decision causing a significant change in benefits."); Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981); Crady v. Liberty Nat. Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."); *cf.* Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996)(demotion without change in pay, benefits, duties or prestige insufficient); Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994)(reassignment to a more inconvenient job insufficient); Williams v. Bristol-Myers Squibb, 85 F.3d 270, 274 (7th Cir. 1996)(A

transfer that does not involve a demotion in form or substance does not rise to the level of an adverse employment action). Based on the record before the court, plaintiff has failed to show an adverse employment action. Thus, plaintiff has failed to establish a *prima facie* case of discrimination.

Defendants also assert that plaintiff fails to show that she was treated different than other similarly situated coworkers for engaging in the same misconduct.

Plaintiff must establish that "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F2d 577, 583 (6th Cir. 1992)(citing Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531 (S.D.N.Y.1986), aff'd, 814 F.2d 653 (2d Cir.1987); Lanear v. Safeway Grocery, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the white employee were similarly situated in all respects and that the other employee's acts were of comparable seriousness to his own); Cox v. Electronic Data Systems Corp., 751 F.Supp. 680 (E.D.Mich.1990)); Radue v. Kimberly-Clark Corp., 219 F3d 612,617-18 (7th Cir. 2000)(holding that plaintiff must demonstrate that the same supervisor was involved in comparable situations to demonstrate disparate treatment of similarly situated employees); Stanback v. Best Diversified Products, Inc., 180 F.3d 903,910 (8th Cir. 1999)(same); Shumway v. United Parcel Serv., Inc., 188 F.3d 60,64(2d Cir. 1997)(employees were not similarly situated because they were not supervised by the same person).[10]

---

[10] There is no published Fourth Circuit case on point; however, the Fourth Circuit has cited with approval the precendent in this string cite in the unpublished cases of Flateau v. South Carolina Commission for the Blind, 2002 WL 31553805 (4th Cir. 2002); Heyward v. Monroe, 1998 WL 841494 (4th Cir. 1998); Edwards v. Newport News Shipbuilding and Dry Dock Co., 1998 WL 841567 (4th Cir. 1998).

While defendants point out in their memorandum that plaintiff was the only employee in her workplace in her position, plaintiff presents, and the record contains, no evidence upon which a *prima facie* case of different treatment or other evidence creating an inference of discrimination may be made. Thus plaintiff fails to make a showing as to the fourth element of the *prima facie* case.

Defendants also claim that plaintiff fails to present a case involving conduct sufficiently severe or pervasive to create an abusive working environment. To qualify as severe and pervasive for purposes of Title VII, the harassment must be objectively and subjectively severe or pervasive as to alter the conditions of plaintiff's employment and render the workplace abusive. Faragher , 524 U.S. at 786; Hartsell v. Duplex Products, 123 F.3d 766, 773 (4th Cir. 1997). The Fourth Circuit has utilized a four factor approach to evaluate the totality of the circumstances in determining whether conduct is severe or pervasive: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance. Connor v. Schrader Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000).

Plaintiff presents no evidence that any conduct was based on gender or race. Therefore, the conduct does not qualify as severe and pervasive for purposes of Title VII.

Defendants further seek summary judgment under the *Faragher/Ellerth* defense. A defendant may escape liability for sexual harassment as a matter of law if it can show (1) it exercised reasonable care to prevent and correct promptly any harassing behavior," and (2) plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998) and Burlington Industries, Inc. V. Ellerth, 524 U.S. 742, 764-65 (1998)

The undisputed evidence is that defendant maintained, and informed plaintiff of, a anti-harassment policy. Plaintiff initiated a complaint but, after requested to do so, failed to provide information to defendants so they could conduct an investigation. Thus, based on the record before the court, the corporate defendant is entitled to summary judgment based upon the *Faragher/Ellerth* defense.

Finally, defendants argue that any claims plaintiff may be asserting outside of the allegations contained in the Charge of Discrimination filed August 16, 2002,[11] should be dismissed.

Before a plaintiff has standing to file suit under Title VII, she must exhaust her administrative remedies by filing a charge with the EEOC. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The scope of a private action is defined by the scope of the administrative charge from which it arises and from any findings that arise out of the investigation of the charge. EEOC v. General Elec. Co., 532 F.2d 359, 365 (4th Cir. 1976). Therefore, only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996) (sexual harassment and discriminatory pay and benefits claims dismissed because EEOC charge alleged only a failure to promote); Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995) (hiring, promotion, and training discrimination claims dismissed where EEOC charge alleged only discriminatory discipline).

The only allegations are of record are within plaintiff's complaint. She has failed to respond

---

[11] Apparently, plaintiff was discharged from her employment with Bethea Home subsequent to filing her charge and this action.

to discovery or defendants' motion for summary judgment indicating any claim outside of her complaint. Therefore, this issue is moot.

For the foregoing reasons, it is recommended that defendants motion for summary judgment be granted. The only remaining claim is for discrimination based on disability against South Carolina Baptist Ministries for the Aging, Inc., and Bethea Baptist Retirement Community and Healthcare Center. Defendants have not sought summary judgment on this claim. Provided the district judge agrees with this recommendation, this case shall be consolidated with case 4:04-23042-RBH-TER.

January 30, 2006
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

**The parties' attention is directed to the important notice contained on the following page(s)**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

**The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).**

**During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:**

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

***Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:**

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

***See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:**

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

4:04-cv-00216-RBH     Date Filed 01/30/06     Entry Number 44     Page 19 of 19

...